CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

MAY 15 2007

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 5:07CR00025 |
| v. | |
| | REPORT AND RECOMMENDATION |
| PERCIVAL NORMAN FENTON, | |
| | By: B. WAUGH CRIGLER |
| Defendant. | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The defendant's right to be charged by Grand Jury Indictment having been duly waived, the government filed an Information charging defendant in Counts One through Forty-Eight with engaging in a scheme to defraud and to obtain money by false pretenses by using the United States mails, in violation of Title 18, United States Code, Section 1341; and in Count Forty-Nine with knowingly making a false material declaration before a Court of the United States, in violation of Title 18, United States Code, Section 1623(a).

On May 4, 2007, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Counts One through Forty-Nine of the Information pursuant to a plea agreement between defendant and the government. At this hearing the defendant was placed under oath and testified that his full legal name is Percival Norman Fenton, that he was born on October 8, 1950, and that he received some college education but did not graduate from college. The defendant stated that he can read, write, and understand the English language. The

defendant stated that he was fully aware of the nature of the charges against him and the consequences of pleading guilty. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. The defendant stated that he had no other physical or mental condition which impaired his ability to understand the nature of the proceedings being held.

The defendant testified that he had received a copy of the Information pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. He also testified that he had read the plea agreement in its entirety and had discussed the plea agreement with his counsel before signing the agreement. The defendant stated that he understood the terms of the agreement and that the document presented to the court set forth his agreement with the government in its entirety. The defendant specifically testified that he understood that under the terms of the agreement he was waiving rights to appeal or to collaterally attack his conviction or sentence and that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in Counts One through Forty-Nine, including any facts related to sentencing. The defendant's counsel stated that he had reviewed each of the terms of the plea agreement with the defendant and was satisfied that he understood those terms.

The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises other than those contained in his agreement with the government, or made any assurances or threats to him in an effort to induce his plea. The defendant testified that he

understood that the offenses with which he is charged are felonies and that, if his plea is accepted, he will be adjudged guilty of those offenses. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $4900.00. The defendant stated he knew that he would have to pay restitution based upon the entire scope of his criminal conduct, and not just the charges to which he was pleading guilty. The defendant acknowledged that he would have to pay $400,000 in restitution, payable in full immediately.[1] The defendant stated that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant stated that he understood that he must submit to the government a complete and truthful financial statement revealing all his assets and liabilities on a form provided by the government within 30 days of the date of the plea agreement. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case.

The defendant was informed that the maximum possible penalty for Counts One through Forty-Eight, for each count, is a fine of $250,000, twenty years imprisonment, and a period of supervised release. The defendant was further informed that the maximum possible penalty for Count Forty-Nine is a fine of $250,000, five years imprisonment, and a period of supervised release. The defendant was advised that his assets might be subject to forfeiture.

The defendant was informed that under the Sentencing Reform Act of 1984, the United

---

[1] The plea agreement provides that because the defendant lacks the funds to pay the restitution in full immediately, he is permitted to make payments.

3

States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the Sentencing Guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report had been prepared and both parties had been given an opportunity to challenge the reported facts and the application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him and that the court has the authority to issue a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty.

The defendant was informed that the plea agreement was entered into pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The defendant acknowledged that he and the government agreed that the sentencing guideline range under the agreement for all counts to run concurrently shall be forty-six to fifty-seven months incarceration and a three year period of supervised release. The parties agreed that the 2001 Sentencing Guideline Manual will be used and that a base offense level of six is applicable. The defendant testified he knew that it had been agreed that the amount of loss attributable to his offenses is between $400,000 and $1,000,000; therefore, USSG § 2B1.1(b)(1)(H) is applicable and adds fourteen levels. Also, the

4

defendant stated that he and the government had agreed that because the offenses involved an abuse of trust, two levels would be added under USSG § 3B1.3, and because it was a scheme to defraud more than fifty victims, four levels would be added under USSG § 2B1.1(b)(2)(B). The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a two-level reduction under USSG § 3E1.1(a) for acceptance of responsibility. Additionally, defendant stated that he understood that because he had agreed to plea guilty before 1:00 p.m. on April 20, 2007, the government would file the proper papers authorizing an additional one level reduction under USSG § 3E1.1(b).

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if her guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses; and
6. The right to decline to testify unless he voluntarily elected to do so in his own defense;
7. The right to a unanimous guilty verdict; and
8. The right to appeal a guilty verdict.

The defendant also testified that he understood that if he is adjudged guilty of the charges against him, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that he was fully satisfied with the advice and representation given to him

5

in this case by his counsel. The defendant informed the court that the representation he had received had been "very effective" and that he was "very pleased" with his counsel's representation. The defendant testified that he understood the possible consequences of his plea and the consequences of breaching any term of the plea agreement. The defendant asked the court to accept his plea of guilty to Counts One through Forty-Nine of the Information.

**THE GOVERNMENT'S EVIDENCE**

The defendant waived his right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

Had this matter proceeded to trial, the United States would have established beyond a reasonable doubt that the defendant, Percival Norman Fenton, committed 48 counts of Mail Fraud, in violation of Title 18, United States Code, Section 1341, and 1 count of Perjury, in violation of Title 18, United States Code, Section 1623(a).

The Food and Drug Administration, United States Department of Health and Human Services, is an agency of the United States charged with protecting the health and safety of the American public by assuring, among other things, that mammography equipment and testing is properly certified and adheres to high quality standards to assure safe, reliable, and accurate mammography on a nationwide level.

On February 24, 2006, investigators interviewed P. Norman Fenton. According to the defendant's statement, by 1989, he had fraudulently obtained licenses to provide radiological health physics services in West Virginia, Virginia, Maryland, North Carolina, Kentucky, and Tennessee.

6

Fenton stated that may have been licensed in Pennsylvania due to a reciprocity agreement. Fenton stated that he was not sure what educational background information he provided to these states in order to become licensed. Fenton admitted that he did not have the required educational background to obtain the various state licenses.

Fenton was then questioned about the legitimacy of his Master's and Doctorate degrees as well as his 1993 "American Board of Diagnostic Medical Health Physics" (ABDMHP) certificate, which he provided to the FDA, various licensing boards, and the Department of Veteran's Affairs. Fenton stated, "I'm foolish to believe it was legit." He then stated that he obtained both his Master's degree and Doctorate degree from the University of San Mortiz (USM) in one day in 1998. Fenton stated that in 1998, he was online when a "pop-up ad" appeared on his computer advertising an online degree program. Fenton stated that he replied to the ad, and then talked to "a guy in New York on the phone" about obtaining the advanced degrees from USM. Fenton stated that he was unable to recall the man's name or telephone number.

Fenton stated that the unknown man in New York asked him "what degree do you want?", and Fenton stated that he replied "a Master's degree." Fenton stated that the Master's degree cost "around $500." Fenton stated that the unknown man offered him a Ph.D. and the "Cum Laude" distinction also. Fenton stated that the Ph.D. was "50% more than the Master's degree", advising that he believes he paid $250 for the doctorate. Fenton stated that he was unsure how much extra, if any, the "Cum Laude" distinction cost him. He stated that USM provided him with backdated transcripts listing all of the courses he had supplied to them. Fenton was asked if he wrote his own transcripts and supplied the information to USM. Fenton replied "That's correct." He further advised that he told USM, "This is

7

the way the transcripts should read." Fenton stated that the received the Master of Science in Radiation Health Sciences and the Ph.D. in Radiation Health Sciences diplomas and transcripts from USM approximately one week later. Investigators asked Fenton if he knew the degrees were fake. Fenton replied, "Yes."

Fenton was then asked about the ABDMPH certificate. He stated that this was a fictitious board that he had made up. Fenton stated that in 1993, he had the fake certificate professionally printed on a computer at a "Rapid Print" store in Waynesboro, VA.

Fenton was then asked about his activities related to Nuclear Regulatory Commission (NRC) regulated activities. He stated that he was not listed as a Radiation Safety Officer (RSO) on any of his clients' licenses as he does not reside close to any of the facilities, and would not be able to respond in a timely fashion if needed. Fenton was then asked what NRC-related services he provided to his clients. He stated that he provided "record keeping, consultation, leak testing, dose calibration accuracy testing, efficiency testing, CEU lectures, instruction, contamination surveys, dose rate surveys, and air clearance testing." Fenton advised that he never conducted fetal dose estimates. Fenton stated that he never referred to himself as a "Medical Physicist" to the NRC, but that he signed letters to the NRC falsely listing himself as a Ph.D.

Fenton stated that he always conducted the inspections, surveys, and testing that he was paid to do, and never falsified any of the data. He stated that typically all or most of his clients were mailed invoices from his residence/home office in Nellysford, VA, and that the clients mailed the checks back to him at the same address.

As to Counts 1 through 48 of the Information, the evidence establishes that Fenton, from in or

about January, 2000, through on or about March 16, 2006, participated in a scheme to defraud Warren Memorial Hospital, located in Front Royal, Virginia, Martha Jefferson Hospital, located in Charlottesville, Virginia, and Culpeper Regional Hospital, located in Culpeper, Virginia. As the above evidence supports, Beale accepted payment from the hospitals and other medical facilities for services allegedly rendered by Fenton after he had falsified his qualifications to serve as a medical physicist and after he held himself out to the hospitals and medical facilities as a medical physicist. On the dates alleged in the Information, Warren Memorial Hospital (WMH), Martha Jefferson Hospital (MJH), and Culpeper Regional Hospital (CRH) mailed to Fenton, using the United States mails, computer payment checks for services allegedly rendered on 48 separate occasions.

As to Count 49, the Government would have introduced evidence that on May 12, 2005, the defendant, while under oath as a witness at the sentencing of Perry Morrison Beale in United States District Court, Harrisonburg, Virginia, a proceeding before and ancillary to the United States District Court for the Western District of Virginia, knowingly did make a false material declaration. Specifically, the defendant was asked to provide to the Court a summary of his educational background. Fenton informed the Court that he had "an undergraduate degree in nuclear medicine, and graduate degrees in radiation health sciences, both master's and Ph.D." Mr. Fenton was also asked if he was qualified to go into a hospital or medical facility and inspect their nuclear medicine equipment and other types of x-ray machines, including mammography machines. Fenton informed that Court that he was so qualified. The Government would have established that Fenton's testimony was material, and, as he then and there well knew and believed, false.

**FINDINGS OF FACT**

9

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;

2. The defendant is aware of the nature of the charges and the consequences of his plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Counts One through Forty-Nine of the Information; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Counts One through Forty-Nine of the Information and adjudge him guilty of those offenses. The undersigned further DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for September 4, 2007 at 2:00 p.m. before the presiding District Judge in Harrisonburg.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The

presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

May 15, 2007
Date